DECISION AND JUDGMENT ENTRY
{¶ 1} Dale L. Sheets appeals his conviction and sentence in the Athens County Court of Common Pleas. Sheets contends that the jury verdict finding that he violated R.C. 2921.331(B), failure to comply with the signal of a police officer with a substantial risk of serious physical harm to persons or property, is not supported by sufficient evidence and is contrary to the manifest weight of the evidence. Because we find that the evidence admitted at trial, if believed, would convince the average mind of Sheets' guilt beyond a reasonable doubt, and because, upon reviewing the entire record, we cannot find that in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice, we disagree. Sheets asserts that the trial court erred in sentencing him without considering the mandatory sentencing factors enumerated in R.C. 2921.331(C)(5)(b). Because the record reflects that the trial court did consider the R.C.2921.331(C)(5)(b) factors, we disagree. Finally, Sheets contends that he did not receive effective assistance of counsel because his trial counsel failed to move for acquittal under Crim.R. 29 and failed to request a jury instruction on the lesser-included offense of misdemeanor failure to comply. Because we find that a Crim.R. 29 motion would have been fruitless, and further because we find that trial counsel's failure to request an instruction on a lesser-included offense might be considered to be sound trial strategy, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} The Athens County Grand Jury indicted Sheets on one count of failure to comply with an order or signal of a police officer with the specification that Sheets was driving in a manner that caused substantial risk of harm to himself and other persons or property, and on one count of driving while under the influence of alcohol. Sheets pled not guilty, and the case proceeded to a trial by jury.
¶ 3 The trial testimony revealed that on September 16, 2001, Sheets drove a 1981 black pick-up truck to the EZ Mart in Glouster. Sheets filled the truck with gasoline while his companions, David Robinson and Richard Stevenson, went into the store. Sheets allegedly gave Stevenson ten dollars to pay for the gasoline. Stevenson forgot to give the EZ Mart clerk the ten dollars, and Sheets drove away without paying for the gasoline.
 {¶ 4} The EZ Mart clerk called the police to report that a black pick-up truck occupied by three people drove off without paying for gasoline. Officer Mace of the Glouster Police Department heard the radio dispatch regarding the drive-off. Officer Mace began looking for the black pick-up truck as he drove on Binderbasin Road toward the EZ Mart. Officer Mace's cruiser was marked with reflective emblems on the side, and he had his emergency lights activated. When Officer Mace saw Sheets' truck approaching, he attempted to stop it by cutting in front of the truck and stopping.
 {¶ 5} Sheets showed no sign of attempting to slow down or yield to Officer Mace, and Officer Mace became concerned for his safety and for the potential damage to his vehicle. Consequently, Officer Mace moved his cruiser out of Sheets' way and Sheets passed him, going partway into the ditch as he did so. Officer Mace then made a U-turn and pursued Sheets. Sheets was driving approximately fifty miles per hour. Officer Mace believes the speed limit on Binderbasin Road is twenty-five or thirty-five miles per hour, but agreed that the speed limit is not posted.[2]
 {¶ 6} Approximately two-tenths of a mile down the road, Sheets turned into the Hand family's driveway. Four members of the Hand family testified that Sheets came "flying" down the road and into their driveway. Jacob Hand stated that the back of Sheets' pick-up truck was going too fast and that it spun with a slide as it turned into the driveway. Jacob Hand further stated that Sheets slammed on the brakes and that the truck went beyond the length of the driveway, sliding five to seven feet into the yard before coming to a stop. Diana Hand testified that she moved away when the truck pulled into the driveway, because it really frightened her and she was eight months pregnant.
 {¶ 7} As the truck came to a stop, Stevenson jumped from the truck, dropped his beer, and began to run into the woods. Officer Mace pulled in behind Sheets' truck. Sheets exited the truck and began walking quickly away. Sheets did not heed Officer Mace's orders to stop, and as Officer Mace pulled his gun, Sheets broke into a run. He slipped and fell after a short distance. Officer Mace handcuffed Sheets and took him back to the cruiser.
 {¶ 8} In addition to the testimony of the EZ Mart clerk, Officer Mace, and the four members of the Hand family, one of Sheets' passengers, Robinson, testified for the prosecution. Robinson stated that Sheets was "driving like a maniac" and that he was concerned for his own safety when Sheets continued driving after Officer Mace began to chase them.
 {¶ 9} Sheets' other passenger, Stevenson, testified for the defense that Officer Mace never signaled for Sheets to stop and that Sheets was driving normally throughout the incident. Stevenson also stated that he forgot to pay for the gasoline with Sheets' ten dollars.
 {¶ 10} Sheets testified that he was not aware that he had not paid for his gasoline, and that he never saw Officer Mace signal him to pull over. Sheets stated that he first suspected, but was not sure, that Officer Mace wanted him to stop when he saw Officer Mace turn around to follow him. At that point, he immediately pulled over at the first available safe location, which was the Hand's driveway.
 {¶ 11} The jury found Sheets guilty of failure to comply, and found that Sheets' conduct caused a substantial risk of physical harm to persons or property. The jury found Sheets not guilty of driving under the influence of alcohol.
 {¶ 12} Sheets appeals, asserting the following assignments of error: "I. Dale Sheets was denied due process when he was convicted of Failure to Comply based on evidence presented at trial that was insufficient and against the manifest weight of the evidence * * *. II. The trial court erred by sentencing Mr. Sheets without considering the mandatory sentencing factors enumerated in R.C. 2921.331(C)(5)(b). III. Dale Sheets was denied his right to effective assistance of counsel at trial * * *."
 II. {¶ 13} In his first assignment of error, Sheets contends that his conviction is not supported by sufficient evidence and is contrary to the manifest weight of the evidence.
 {¶ 14} The Ohio Supreme Court has clearly outlined the role of an appellate court presented with a sufficiency of evidence argument. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319.
 {¶ 15} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,175. Rather, this test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 79-80; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 16} In this case, Sheets contends that the State failed to prove that he caused a substantial risk of serious physical harm to persons or property.
 {¶ 17} At trial the State presented Robinson's testimony that, as a passenger in Sheets' vehicle, he felt frightened for his own safety and felt that Sheets was driving like a maniac. Officer Mace likewise testified that he feared for his own safety and for his police cruiser. Finally, Diana Hand testified that she moved over when the truck pulled in because she was frightened, especially because she was eight months pregnant at the time. Officer Mace and the Hand family members all described Sheets' speed as excessive. The Hands stated that Sheets was "flying." Moreover, Jacob Hand explained that Sheets' truck slid and spun as it turned, and slid five to seven feet beyond the driveway into the yard after Sheets slammed on the brakes.
 {¶ 18} We find that this evidence, viewed in a light most favorable to the prosecution, reveals that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Specifically, Sheets risked colliding with Officer Mace's cruiser, risked colliding with a parked car in the Hand's driveway, and risked striking one of the members of the Hand family standing next to the driveway in the yard. Thus, the State presented sufficient evidence to sustain Sheets' conviction.
 {¶ 19} Even when a verdict is supported by sufficient evidence, an appellate court may nevertheless conclude that the verdict is against the manifest weight of the evidence because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v. Banks (1992), 78 Ohio App.3d 206, 214; State v.Martin (1983), 20 Ohio App.3d 172, 175. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Martin at 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus. In reviewing the evidence we must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and the weight to be given to the evidence.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 20} After reviewing the entire record, including Sheets' and Stevenson's testimony that Officer Mace never signaled for Sheets to pull over, and after considering the credibility of the witnesses, we find that the jury did not clearly lose its way and create a manifest miscarriage of justice. The record contains substantial evidence, in the form of the testimony of Officer Mace, Robinson, and the Hands, upon which the court could reasonably conclude that the State proved beyond a reasonable doubt that Sheets failed to comply with Officer Mace's signal and caused substantial risk of physical harm to persons or property.
 {¶ 21} We find that Sheets' conviction is supported by sufficient evidence and that it is not against the manifest weight of the evidence. Accordingly, we overrule Sheets' first assignment of error.
 III. {¶ 22} In his second assignment of error, Sheets contends that the trial court erred in failing to consider the factors outlined in R.C. 2921.331(C)(5)(b) before sentencing him. Sheets does not challenge his sentence on any other grounds.
 {¶ 23} Pursuant to R.C. 2921.331(C)(5)(b), the trial court "shall consider, along with the factors set forth in sections 2929.12 and2929.13," all of the following nine specific factors: "(i) The duration of the pursuit; (ii) The distance of the pursuit; (iii) The rate of speed at which the offender operated the motor vehicle during the pursuit; (iv) Whether the offender failed to stop for traffic lights or stop signs during the pursuit; (v) The number of traffic lights or stop signs for which the offender failed to stop during the pursuit; (vi) Whether the offender operated the motor vehicle during the pursuit without lighted lights during a time when lighted lights are required; (vii) Whether the offender committed a moving violation during the pursuit; (viii) The number of moving violations the offender committed during the pursuit; (ix) Any other relevant factors indicating that the offender's conduct is more serious than conduct normally constituting the offense."
R.C. 2921.331(C)(5)(b). Although R.C. 2921.331(C)(5)(b) directs the trial court to consider the listed factors, the statute does not require the trial court to make findings regarding those factors.
 {¶ 24} Generally, a trial court's sentencing entry should include the trial court's findings regarding the sentencing factors as well as the facts in the record supporting those findings. See State v. Reed
(Dec. 26, 2000), Washington App. No. 00CA01. However, in the interests of justice we may examine the entire record to determine the basis of a lower court judgment. Id. at fn. 1, citing State v. Blair (Dec. 27, 1999), Scioto App. Nos. 98CA2588 98CA2589, citing State v.Patterson (Sept. 21, 1998), Washington App. No. 97CA28. Therefore, in felony sentencing cases, while a trial court must give its reasons for its findings, they need not be specified in the sentencing entry as long as they are discernable from the record as a whole. Id. However, the better practice is to articulate both the findings and reasons for the findings, when required, in the sentencing entry. Id.
 {¶ 25} Sheets asserts that the trial court failed to consider the R.C. 2921.331(C)(5)(b) factors because the trial court sentenced him to three years imprisonment despite the fact that most of the factors weigh in his favor. Specifically, Sheets contends that the pursuit in this case was short in duration and length, that he did not exceed the speed limit or commit any other moving violation, that he did not run any stop signs or traffic lights, and that he was not required to use his headlights at the time of the pursuit. We note, however, that the evidence is contrary to Sheets' assertion with regard to at least one of these factors, as the evidence indicated that Sheets drove at a high rate of speed in excess of the speed limit during the pursuit.
 {¶ 26} The trial court failed to mention R.C. 2921.331(C)(5)(b) in its sentencing entry. During the sentencing hearing, however, the trial court heard Sheets' argument regarding the R.C. 2921.331(C)(5)(b) factors along with Sheets' arguments regarding the traditional sentencing factors, and the court examined the text of R.C. 2921.331(C)(5)(b). In announcing its sentence the court stated, "[w]ith regard to the seriousness factors the court has considered that as pointed out by [Sheets' counsel] in 2929.331 (sic), and does not find that to be a consideration in this particular case."
 {¶ 27} Although the trial court may have imprecisely chosen its words to express that the R.C. 2921.331(C)(5)(b) factors were outweighed by the factors favoring a prison term, we find that the transcript indicates that the trial court did consider the R.C. 2921.331(C)(5)(b) factors. The court not only heard Sheets' argument regarding the factors, it also examined the statute and explicitly stated that it considered them. While it would have been preferable for the trial court to state in its sentencing entry that it considered the R.C.2921.331(C)(5)(b) factors, we find that its failure to do so does not constitute reversible error in light of its obvious consideration of the factors during the sentencing hearing in this case.
 {¶ 28} Accordingly, we overrule Sheets' second assignment of error.
 IV. {¶ 29} In his third assignment of error, Sheets contends that he did not receive effective assistance of counsel in the trial court. Specifically, Sheets contends that his trial counsel was ineffective in her failure to move for an acquittal pursuant to Crim.R. 29. Additionally, Sheets contends that his trial counsel was ineffective in her failure to request that the trial court instruct the jury on the lesser-included offense of misdemeanor failure to comply.
 {¶ 30} "Reversal of a conviction or sentence based upon ineffective assistance requires (a) deficient performance, `errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment'; and (b) prejudice, `errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" State v. Ballew (1996), 76 Ohio St.3d 244, 255, quoting Strickland v. Washington (1984), 466 U.S. 668, 687.
 {¶ 31} As to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland at 689. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.
Counsel's failure to assert a meritless claim does not constitute ineffective assistance of counsel. State v. Payton, Ross App. No. 01CA2606, 2002-Ohio-508; State v. Nitenson (Feb. 24, 1994), Highland App. No. 91CA796, citing Thomas v. United States (8th Cir. 1991),951 F.2d 902, 905.
 {¶ 32} Sheets first asserts that his trial counsel should have made a Crim.R. 29 motion for acquittal on the grounds that the State failed to present sufficient evidence to sustain a conviction for felony failure to comply. In resolving Sheets' first assignment of error, we determined that the State presented sufficient evidence to sustain his conviction for felony failure to comply. Therefore, a Crim.R. 29 motion for acquittal based on insufficient evidence would have been fruitless in this case. Thus, trial counsel's failure to move for acquittal under Crim.R. 29 does not constitute ineffective assistance.
 {¶ 33} Additionally, Sheets contends that his trial counsel's failure to request an instruction on the lesser-included offense of misdemeanor failure to comply constitutes ineffective assistance. However, Sheets testified at trial that Officer Mace never signaled for him to stop and that he did not fail to comply with Officer Mace's signal. Additionally, Sheets' passenger testified that Officer Mace never signaled for Sheets to stop and that Sheets was driving normally, not as if he was avoiding pursuit. Sheets' trial counsel may have reasonably believed that the jury was more likely to acquit Sheets if it did not have the option of a compromise verdict. Thus, trial counsel's actions may reasonably be considered to be sound trial strategy. Therefore, trial counsel did not render ineffective assistance by failing to request an instruction on a lesser-included offense.
 {¶ 34} Accordingly, we overrule Sheets' final assignment of error, and we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Evans, J.: Concur in Judgment and Opinion.
[2] Sheets' trial counsel suggested by her questioning, and Sheets' appellate counsel suggests in his brief to this court, that the speed limit was actually fifty-five miles per hour. The record contains no evidence to support this assertion, and therefore we decline to address it.